AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.   MJ20-151
One iPhone 11 Pro in a black case )
)
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One iPhone 11 Pro in a black case, further described in Attachment A, attached hereto and incorporated herein.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
   ☑ evidence of a crime;
   ☑ contraband, fruits of crime, or other items illegally possessed;
   ☑ property designed for use, intended for use, or used in committing a crime;
   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. 5861 | Unlawful Possession of Short-Barreled Rifles and Machine Gun |

The application is based on these facts:
See attached Affidavit of Lexie Widmer.

   ☑ Continued on the attached sheet.
   ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Lexie Widmer, ATF
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:  04/02/2020
Judge's signature

City and state:  Seattle, Washington           Brian A. Tsuchida, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT OF SPECIAL AGENT LEXIE WIDMER**

STATE OF WASHINGTON  )
                                              )    ss
COUNTY OF KING            )

I, Lexie Widmer, a Special Agent with the United States Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), having been duly sworn, state as follows:

## INTRODUCTION

1. This Affidavit is submitted in support of an Application for a Search Warrant to search the following item, more fully described in Attachment A (attached hereto and incorporated herein), for the seizure of the items specified in Attachment B (attached hereto and incorporated herein):

SUBJECT DEVICE: One Apple iPhone 11 Pro in a black case which was seized from James Michael Linton's property at the Snohomish County Jail on March 10, 2020. The phone is currently stored in the ATF Seattle V Evidence vault.

The search of the SUBJECT DEVICE will be restricted as set forth in Attachment B.

## AFFIANT'S TRAINING AND EXPERIENCE

I am a special agent (SA) duly sworn and employed by the U.S. Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I am currently assigned to the Seattle V ATF Field Office, located within the Seattle, Washington, Field Division. I have been employed as a special agent since July 2017.

2. I am a graduate of Western Oregon University in Monmouth, Oregon, where I received a Bachelor of Science in Computer Science and a Bachelor of Science in Criminal Justice. I completed a twelve-week Criminal Investigator Training Program

AFFIDAVIT OF LEXIE WIDMER - 1
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(CITP) and a fifteen-week Special Agent Basic Training (SABT) at the ATF National Academy/Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.

3. I am responsible for investigations involving specified unlawful activities, to include violent crimes involving firearms that occur in the Western District of Washington. I am also responsible for enforcing federal firearms and explosives laws and related statutes in the Western District of Washington. I received training on the proper investigative techniques for these violations, including the identification of firearms and location of the firearms' manufacture. I have actively participated in investigations of criminal activity, including but not limited to: crimes against property, narcotics-related crimes, and crimes involving the possession, use, theft, or transfer of firearms. During these investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the commission of criminal violations. As a law enforcement officer, I have testified under oath and affirmed to applications of search and arrest warrants.

## PURPOSE OF AFFIDAVIT

4. This Affidavit is made in support of a search warrant for the SUBJECT DEVICE, a cell phone belonging to James Michael Linton, as further described in Attachment A.

5. I make this Affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information gained from, but not limited to, the following sources: (1) investigation conducted by other law enforcement personnel, whose findings and observations have been reported to me either directly or indirectly; (2) statements of witnesses; (3) business and public records; and (4) law enforcement database inquiries.

6. Except as otherwise noted, the information set forth in this Affidavit has been provided to me by other law enforcement officers. Unless otherwise noted, whenever in this Affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay

AFFIDAVIT OF LEXIE WIDMER - 2
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Dates and times provided herein are approximate.

7. Furthermore, my experience as a special agent forms a basis for the opinions and conclusions set forth below.

8. Because this Affidavit is offered for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not contain all of the information that the government possesses relative to this investigation. I have set forth only the facts that I believe are necessary to the determination of probable cause to believe that the items to be searched contain evidence, fruits, and instrumentalities of the crime of Unlawful Possession of a Machinegun and Unlawful Possession of a Short-Barreled Rifle, in violation of Title 26, United States Code, Section 5861(d).

## APPLICABLE OFFENSES

9. It is unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record"; "to obliterate, remove, change, or alter the serial number or other identification of a firearm required by this chapter"; "to receive or possess a firearm having the serial number or other identification required by this chapter obliterated, removed, changed, or altered"; or "to receive or possess a firearm which is not identified by a serial number as required by this chapter." 26 U.S.C. § 5861(d), (g), (h), and (i).

10. Additionally, it is unlawful for any person to transfer or possess a machinegun, except under the authority of the United States, or where the machine gun was lawfully possessed prior to May 19, 1986. 18 U.S.C. § 922(o). The manufacture of new machineguns is also prohibited, except for transfer to governmental agencies. 27 C.F.R. 479.105(c).

11. Pursuant to the National Firearms Act (NFA), a firearm is defined as including: "a rifle having a barrel or barrels of less than 16 inches in length"; "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches

AFFIDAVIT OF LEXIE WIDMER - 3
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  or a barrel or barrels of less than 16 inches in length"; and "a machine gun." 26 U.S.C. § 5845(a)(3), (4), and (6).

12. A machinegun is defined as including "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manually reloading, by a single function of the trigger" and "the frame or receiver of such weapon." 26 U.S.C. § 5845(b).

## INVESTIGATION AND PROBABLE CAUSE

13. On March 8, 2020, Washington State Patrol (WSP) and Everett Police Department (EPD) personnel responded to a single vehicle collision at the 3400 block of eastbound SR 526, Everett, Washington.

14. Upon arrival, WSP Trooper Vanderwielen determined that the driver had left the location of the collision, and relayed that information to EPD Officer Freeman. Trooper Vanderwielen located a witness on scene, identified as R.W., who told him that the person he believed to have been the driver of the vehicle had asked him for a ride to the Jack in the Box at 11820 Evergreen Way. R.W. stated that after R.W. dropped the driver off, R.W. returned to the crash site to speak with law enforcement. R.W. had taken a picture of the driver's clothing and sent it to Trooper Vanderwielen.

15. When Officer Freeman arrived on scene, he saw the vehicle was bearing Idaho temporary registration 5720320. He saw the registration on the rear of the vehicle listed James M. Linton as the registered owner. Officer Freeman asked his dispatch to perform a records check for that name.

16. Officer Freeman also saw the vehicle was off the road on an embankment and had severe damage. The rear passenger door and front passenger doors were open. In the back seat, he saw the muzzle of a firearm in plain view.

17. While attempting to identify the driver of the vehicle, due to the vehicle not returning in a computer records check, officers determined they would impound the vehicle because of the firearms inside, so they began an inventory search of the vehicle, prior to towing.

AFFIDAVIT OF LEXIE WIDMER - 4
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18. During the inventory, Officer Freeman located and recovered a loaded 12 gauge shotgun out of the vehicle.

19. Also in the back seat of the vehicle, EPD Officer Gottas located a bag, which he recognized as a bag for carrying firearms. He found what he suspected to be a rifle with a grenade launcher attachment on the lower end of the barrel. He also saw another case outside of the vehicle. Officer Gottas opened this case and found two additional rifles.

20. The officers were then advised by dispatch that its records check showed that James M. Linton was a convicted felon. Officer Freeman compared the address on the driver's license return to the address on the temporary registration and saw they were the same.

21. The officers halted their search and placed the recovered firearms back in the vehicle.

22. At the same time, Trooper Vanderwielen went to the area of the Jack-in-the-Box to look for the driver of the vehicle. He found Linton, who matched the description provided by R.W., and detained him. Linton told Trooper Vanderwielen that he had swerved his truck and crashed. Trooper Vanderwielen relayed this information to Officer Freeman. Trooper Vanderwielen confirmed Linton's identity via driver's license photo. Officer Freeman then confirmed Linton was a convicted felon through Linton's National Crime Information Center (NCIC) criminal history.

23. At the time of his arrest, Linton had been carrying a backpack. Officer Freeman searched that backpack incident to arrest and located a Smith & Wesson .357 magnum revolver loaded with eight rounds.

24. Officer Freeman took custody of Linton from Trooper Vanderwielen. When he told Linton he was under arrest for being a felon in possession of a firearm, Linton stated, "It was a rifle." Linton was transported and booked into the Snohomish County Jail.

AFFIDAVIT OF LEXIE WIDMER - 5
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25. Trooper Vanderwielen provided Officer Freeman with a key fob for a Ram vehicle, which was later confirmed to be the key fob for the involved vehicle. Trooper Vanderwielen had located it in Linton's pocket.

26. Officer Gottas remained on scene with the involved vehicle, pending a search warrant. The vehicle was transported to the Everett Police South Precinct, where it was held until a search warrant could be approved.

27. On the same day, Officer Gottas obtained a Snohomish County District Court search warrant for the involved vehicle.

28. Officers executed the search warrant and found a total of nine firearms, along with numerous firearm magazines and a significant amount of ammunition inside the vehicle.

29. Two of the firearms were suspected short-barreled rifles with flare launchers attached, and another two were also suspected short-barreled rifles. None of these firearms had serial numbers, and during a function check were determined to be fully automatic. Officers also found a Glock pistol that had been converted into a suspected short-barreled rifle.

30. Detective Coleman, a member of the WSP Bomb Squad who had been asked to assist with the warrant execution because of the possible grenade launcher in the vehicle, believed the aforementioned firearms to be items controlled under the National Firearms Act and notified ATF.

31. The other four firearms were a Glock handgun and three shotguns.

32. On March 9 and March 10, 2020, I went to the Everett Police Property Room and viewed evidence related to this case. I examined the five firearms that were potentially regulated by the National Firearms Act. EPD had designated these items as evidence numbers 4, 5, 6, 9, and 10.

33. I examined and measured Item #4. I saw Item #4 was a non-serialized rifle with a barrel length of not more than 5 5/8 inches. The firearm field-tested as a fully-

AFFIDAVIT OF LEXIE WIDMER - 6
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 automatic firearm (machinegun). I saw the selector switch appeared to have three
2 positions – safe, semi-automatic, and fully-automatic.

3       34.     I examined and measured Item #5. I saw Item #5 was a non-serialized rifle
4 with a barrel length of not more than 6 5/8 inches.  The firearm field-tested as a fully-
5 automatic firearm (machinegun). I saw the selector switch appeared to have three
6 positions – safe, semi-automatic, and fully-automatic.

7       35.     I examined and measured Item #6. I saw Item #6 was a Glock pistol that
8 was converted into a rifle with a barrel length of not more than 6 ¾ inches.

9       36.     I examined and measured Item #9. I saw Item #9 was a non-serialized rifle
10 with a barrel length of not more than 8 ½ inches. The firearm field-tested as a fully-
11 automatic firearm (machinegun).  I saw the selector switch appeared to have three
12 positions – safe, semi-automatic, and fully-automatic. I saw this rifle had a flare/round
13 launcher with markings "Use only U.S.C.G. approved flares, smoke, or gas rounds."

14       37.     I examined and measured Item #10. I saw Item #10 was a non-serialized
15 rifle with a barrel length of not more than 9 3/8 inches.  The firearm field-tested as a
16 fully-automatic firearm (machinegun).  I saw the selector switch appeared to have three
17 positions – safe, semi-automatic, and fully-automatic. I saw this rifle had a flare/round
18 launcher with markings "Use only U.S.C.G. approved flares, smoke, or gas rounds."

19       38.     As of March 8, 2020, James Michael Linton had been convicted  of
20 Vehicular Assault, King County Superior Court cause number 08-1-01301-1 SEA, on or
21 about October 27, 2008. The State of Washington defines this offense as a felony.
22 Accordingly, Washington law prohibits Linton from possessing a firearm.

23       39.     On March 10, 2020, I went to the Snohomish County Jail and met with
24 Sergeant Ball. At that time, Linton was still in custody due to his arrest on March 8,
25 2020. Sgt. Ball showed me an Apple iPhone 11 Pro, the SUBJECT DEVICE, that he said
26 had been booked into Linton's property with him.  I seized the phone and took it into
27 ATF custody.

AFFIDAVIT OF LEXIE WIDMER - 7
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

40.     I photographed the phone and booked the phone into ATF evidence under case 787095-20-0024 as Item #001.  It remains secured in the ATF Seattle V Evidence vault.

41.     On March 19, 2020, I submitted a request for the ATF National Firearms Act Branch to query the National Firearms Registration and Transfer Record to determine whether any firearms that are subject to NFA regulation were registered to Linton. The next day, I received a response indicating that no firearms subject to NFA regulation were registered to Linton.

## KNOWLEDGE FROM TRAINING AND EXPERIENCE

42.     Based on my training and experience in investigating firearms possession and trafficking offenses, I am aware that when individuals who are prohibited from legally possessing firearms seek to acquire or dispose of firearms, they typically do so through private sales. A common way in which these types of private firearm sales, also referred to as "street sales," are transacted is via electronic communications such as text message, email, and/or telephone calls. I know that cell phones are frequently used to arrange such transactions because of the flexibility and mobility they offer. I am further aware that when individuals are offering items of value for sale, such as firearms, it is common for them to take a photograph of the item and send it via text message or email to an interested party for their review, or to take a photograph of it to post/advertise it via social media or the internet.  During investigations of unlawful firearms sales, I have found it to be common for buyers' and sellers' cell phones to contain photographs of the firearms that were bought or sold.

43.     I am aware that when individuals who are prohibited from legally possessing firearms seek to acquire firearms, they can also do so by manufacturing the firearms themselves. Homemade firearms are typically non-serialized and are difficult to trace, which may add to their appeal to persons who intend to possess them unlawfully.

44.     Based on my experience, I know that materials, tools, and parts for manufacturing firearms are available over the internet. I am aware that firearm lower

AFFIDAVIT OF LEXIE WIDMER - 8
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 receivers, which are approximately 80% completed and are not considered firearms under
2 federal law, are available for purchase via the internet. As these lower receivers are not
3 considered firearms, they are not subject to the same sales restrictions (background
4 check, transfer via Federal Firearms Licensee, etc.) as completed firearms. There are
5 numerous internet retailers from whom an internet user can purchase 80% lower receivers
6 to be shipped to the user's address.

7     45.    Other items necessary for firearms manufacturing such as upper receivers,
8 barrels, springs, and trigger assemblies are also not subject to the same regulations as
9 completed firearms and can also be purchased from internet retailers. While many
10 firearms can be built or assembled with simple tools, internet retailers also offer specific
11 tools to make the process easier and to allow for the construction of more complicated
12 firearms. These tools include drill bits, drill presses, molds, jigs, and wrenches or sockets
13 that fit particular firearms parts. For individuals interested in completing more complex
14 firearms or completing more firearms in a short amount of time, internet retailers offer
15 specialized Computer Numerical Control (CNC) machines which automate portions of
16 the firearms manufacturing process.  A user can create or download electronic
17 instructions for the machine and use it to cut metal or plastic into very specific shapes
18 with small tolerances.  There are internet retailers that offer small CNC type machines
19 specifically designed for home firearm manufacturing.

20     46.    Based on my experience I also know that persons who manufacture their
21 own firearms rarely design a new type of firearm from scratch.  Typically, the person will
22 start with kits or plans to manufacture a firearm similar to a model available on the
23 commercial market. I am aware that plans and instructions can be readily located and
24 viewed via the internet. I am also aware that internet video sites such as youtube.com
25 contain numerous videos of step-by-step instructions as to how to manufacture certain
26 firearms.

27     47.    Based on my training and experience, I know that data from internet
28 websites may be retained on the cell phone used to access the website. When properly

AFFIDAVIT OF LEXIE WIDMER - 9
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

examined, this data may provide a record of interactions or transactions conducted via the website. In particular, cell phones may retain data regarding when a particular website was visited, various pages or parts of a website that were examined, and transactions that were conducted on the website, as well as internet searches generally. This information may provide relevant insight into the device user's state of mind as it relates to the offense under investigation. For example, information within the device may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning).

48. Based on my training and experience, the data maintained in a cellular telephone may include evidence of a crime or crimes. This includes the following:

  a. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records and to identify contacts by this telephone with other cellular telephones used by other subjects.

  b. The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information because it will identify telephones used by other individuals who are part of illegal firearms transactions, and it confirms the date and time of contacts. This information also is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his criminal associates.

AFFIDAVIT OF LEXIE WIDMER - 10
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      c.     Stored text messages are important evidence, similar to stored numbers. Agents can identify both criminal associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

      d.     Photographs and videos on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures or videos of friends, family, and associates that can identify the user. As noted above, it is also likely that photographs or videos of contraband firearms, firearms accessories, and/or ammunition are on the subject phone.

      e.     Stored contacts records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects

      f.     Many wireless communication devices including cellular telephones such as iPhones, Android phones, and other "smart phones," as well as tablet devices such as Apple iPads, may also be used to access and download information from the Internet and communicate with other devices via a variety of communication channels. These additional communication channels include traditional cellular networks, voice over internet protocol, video conferencing (such as FaceTime and Skype), and a wide variety of messaging applications (such as SnapChat, What'sApp, Signal, Telegram, Viber and iMessage).

      g.     I know based on my training and experience that there are hundreds of different messaging applications available for popular cellular telephones, and that the capabilities of these applications vary widely for each application. Some applications include end-to-end encryption that may prevent law enforcement from deciphering the communications without access to the device and the ability to "unlock" the device through discovery of the user's password or other authentication key. Other communication applications transmit communications unencrypted over centralized servers maintained by the service provider and these communications may be obtained from the service provider using appropriate

AFFIDAVIT OF LEXIE WIDMER - 11
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 legal process. Other applications facilitate multiple forms of communication
2 including text, voice, and video conferencing. I know based on my training and
3 experience that obtaining a list of all the applications present on a handheld mobile
4 computing device can provide valuable leads in an investigation. By determining
5 what applications are present on a device, an investigator may conduct follow-up
6 investigation including obtaining subscriber records and logs to determine whether
7 the device owner or operator has used each particular messaging application. This
8 information may be used to support additional search warrants or other legal
9 process to capture those communications and discover valuable evidence. With
10 regard to drug trafficking investigations, this information can establish a
11 connection to other co-conspirators and customers.

12       h.     Wireless communication devices may also contain geolocation
13 information indicating where the device was at particular times. Many of these
14 devices track and store GPS and cell-site location data to provide enhanced
15 location based services, and serve location-targeted advertising, search results, and
16 other content. Numerous applications available for wireless communication
17 devices collect and store location data. For example, when location services are
18 enabled on a handheld mobile device, many photo applications will embed
19 location data with each photograph taken and stored on the device. Mapping
20 applications such as Google Maps may store location data including lists of
21 locations the user has entered into the application. Location information may
22 constitute evidence of the crimes under investigation because that information may
23 reveal whether a suspect was at or near the scene of a crime at any given moment,
24 and may also reveal evidence related to the identity of the user of the device. This
25 location information is also helpful because, for example, it can show locations
26 where drugs or firearms may be stored.

27       i.     Wireless communication devices may also contain internet browsing
28 history. Most modern cellular devices have the ability to browse the internet.

AFFIDAVIT OF LEXIE WIDMER - 12
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Therefore, browsing history may be stored on any wireless communication device seized during the search. Based on my training and experience, I know that internet browsing history may include valuable evidence regarding the identity of the user of the device. This evidence may include online user names, account numbers, e-mail accounts and bank accounts, as well as other online services. Internet browsing history may also reveal important evidence about a person's location and search history.

## MANNER OF EXECUTION

49. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

50. Based on the aforementioned facts, I believe that the SUBJECT DEVICE will contain evidence of Linton's unlawful possession of unregistered firearms (machineguns and short-barreled rifles) that are regulated under the National Firearms Act.

_____
Lexie Widmer, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

AFFIDAVIT OF LEXIE WIDMER - 13
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   The above-named agent provided a sworn statement to the truth of the foregoing
2   affidavit by telephone on the 2 day of April, 2020.
3
4
5                                          _____
6                                          Brian A. Tsuchida
                                           United States Magistrate Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AFFIDAVIT OF LEXIE WIDMER - 14
USAO No. 2020R00243

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

The property to be searched is the following cellular telephone currently in the possession of the Bureau of Alcohol, Tobacco, Firearms, and Explosives:

SUBJECT DEVICE: One Apple iPhone 11 Pro in a black case, which was seized from James Michael Linton's property at the Snohomish County Jail on March 10, 2020. The phone is currently stored in the ATF Seattle V Evidence vault and identified as ATF evidence under case 787095-20-0024, Item #001. It is depicted in the photograph below.



## ATTACHMENT B
## ITEMS TO BE SEARCHED FOR AND SEIZED

This warrant authorizes the search for the following items in Target Devices:

Evidence, fruits, and/or instrumentalities of the commission of the following crimes: Unlawful Possession of a Short-Barreled Rifle; Unlawful Possession of a Machinegun; and Unlawful Possession of Firearms Not Identified by a Serial Number, in violation of 26 U.S.C. § 5861, specifically:

i. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

ii. Stored list of recent received, sent, or missed calls;

iii. Stored contact information;

iv. Photographs and/or video related to the aforementioned crimes of investigation, or that may show the user of the phone and/or co-conspirators, including any metadata associated with these photographs and videos (such as date and time photograph was taken or obtained, and GPS data); such photographs and videos may include, but are not limited to, photographs and videos of firearms, ammunition, gun boxes, other firearm accessories, or other items relating to firearms (e.g., targets); photographs and videos of individuals displaying firearms or any of the above-described items; and photographs and videos that may show the user of the phone and/or co-conspirators; and

v. Stored text messages (including any attached digital files associated therewith) related to the aforementioned crimes of investigation, including Apple iMessages, Blackberry Messenger messages or other similar messaging services where the data is stored on the telephone.

vi. Other documents, records, communications, images, video or audio recordings, or other data in whatever form, which are or contain evidence of or pertain to the above-listed crime, including: location data, cell tower usage, GPS satellite data, and GPS coordinates for routes and destination queries, internet searches and browsing history, and similar material which is or pertains to evidence of the above-listed crime.

vii. Other data, documents, records, images, videos, or other items in whatever form, tending to identify the subscriber of the device, the user of the device, and/or the possessor of the device, and/or dominion and control of the device.

The search warrant authorizes imaging or otherwise copying all data contained on the SUBJECT DEVICE.  The search warrant also authorizes reasonable efforts to overcome any passcode protection of the SUBJECT DEVICE.